UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERNEST SIMPSON, | : |
| | : |
| Plaintiff, | : |
| | : CIVIL NO. 3:CV-02-2313 |
| v. | : |
| | : (CHIEF JUDGE VANASKIE) |
| FEDERAL BUREAU OF PRISONS, | : |
| ET AL., | : |
| | : |
| Defendants. | : |

## M E M O R A N D U M

### I.        Introduction.

Presently before the Court is Defendant's Second Motion for Summary Judgment

(Dkt. Entry 36), and Plaintiff's Motion for Appointment of Counsel. (Dkt. Entry 43.)  Both motions

are ripe and fully briefed by the parties.  For the reasons that follow, Plaintiff's Motion for

Appointment of Counsel will be denied and Defendant's Second Motion for Summary Judgment

will be granted.

### II.        Procedural History

The sole remaining claim in this matter arises under the Federal Tort Claims Act

("FTCA"), 28 U.S.C. § 2671, et seq., and concerns alleged inadequate medical treatment

provided by the Federal Bureau of Prisons ("BOP") medical staff for Simpson's chronic left ear

infections.  On January 11, 2002, Simpson filed an administrative tort claim against the BOP.

On or about June 21, 2002, he received notice that the BOP denied his claim.  Plaintiff filed the

present action on December 19, 2002, and an amended complaint on January 30, 2003.

Defendant waived service of the complaint on May 22, 2003, and filed a motion for summary

judgment on June 30, 2003.  Simpson then requested, and received, a stay of the summary

judgment proceedings to allow him to pursue discovery in this matter.  (See Dkt. Entry 29.)  The

first summary judgment motion was dismissed, without prejudice.  I ordered that all discovery

be completed by July 30, 2004, and dispositive motions filed by August 31, 2004.  (See Dkt.

Entry 30.)

Almost 4 months after the Defendant allegedly served Plaintiff with inadequate

discovery responses on March 18, 2004, Simpson filed a motion to compel.  (Dkt. Entry 33.)

Prior to the resolution of that motion, Defendant filed a Second Motion for Summary Judgment.

Defendant claims that, absent expert medical testimony, Simpson cannot present a viable

medical malpractice claim.  (Dkt. Entry 37.)

Simpson filed his opposition to Defendant's motion on October 28, 2004.  (Dkt.

Entries 41 and 42.)  He argued that he cannot adequately defend against Defendant's summary

judgment motion without the discovery that was the subject of his motion to compel.  (Dkt. Entry

41.)  He asserted that Defendant's responses to discovery were so inadequate and evasive that

they did not constitute a response, and without full disclosure he could not gain "valuable

information to proffer expert opinions regarding his case."  (Dkt. Entry 42.)  Simpson also

argued that, contrary to Defendant's assertion, the absence of expert testimony on his behalf was not fatal to his case as the matter presented is so simple and obvious as to be within a lay person's range of experience and comprehension.  (Dkt. Entry 41.)

Several months after filing his response, Simpson sought the appointment of counsel.  (Dkt Entry 43).  His motion for appointment of counsel was based on the following factors: (1) his difficulties in obtaining discovery materials from Defendants; (2) his incarceration precluded him from taking depositions in this matter; (3) his inability to obtain medical records from the BOP's outside Ear, Nose and Throat ("ENT") specialist who examined him and performed surgery on his ear; (4) his expected transfer to the Maryland Department of Corrections, which may not have Pennsylvania legal materials; and (5) other medical problems may render him mentally incapable of representing himself at trial.  Defendant opposed this motion based on Simpson's demonstrated ability to represent himself and the questionable merit of his claim given his failure to produce an expert opinion.[1]  (Dkt. Entry 47.)

---

[1]Simpson was released from custody on March 1, 2005.  On January 24, 2005, Simpson filed a "Memorandum of Law in Support of Motion for a TRO and Preliminary Injunction." Although no "motion" was filed by Simpson, Defendant filed an opposition brief.  (See Dkt. Entries 44, 45, and 46.)  In his Memorandum, Simpson advised the Court of his impending transfer to the Maryland Department of Corrections.  He sought judicial intervention to require the BOP to transport his property, including his legal materials, to Maryland.  The BOP responded that Ann Bosse, Assistant Attorney General for the State of Maryland, had contacted it as Simpson had raised the same issue with her in connection with her appearance  as counsel of record in a habeas proceeding Plaintiff had pending in that state.  She advised the BOP that she would make arrangements with Maryland authorities, who would be transferring
(continued...)

On March 14, 2005, I denied Simpson's motion to compel discovery, finding that

Defendant had provided full and complete discovery.  (See Dkt. Entry 52.)  In this regard,

Defendant provided Simpson with a complete copy of the medical records in its possession.

Simpson did not seek reconsideration of that motion, nor has he sought to amend his opposition

to Defendant's motion for summary judgment in light of my ruling on his motion to compel.

**III.**         **Statement of Facts**.

According to Simpson, on February 22, 2000, he went to sick call after

experiencing pain and fluid discharge from his left ear.  (Dkt. Entry 1 and 6.)  He was seen by a

Physician's Assistant ("PA") who diagnosed him as having chronic otitis media, a left perforated

tympanic membrane and yellowish discharge.  The PA noted that Simpson should be seen by

an ENT doctor upon reaching his parent institution.  (Id.)  He was seen almost on a monthly

basis starting from March 2000 until May 2001 by various PAs who prescribed antibiotics for his

persistent ear infections.

Records produced by Defendant indicate that Simpson arrived at FCI Allenwood

on April 6, 2000.  He first sought treatment for an ear infection on May 9, 2000.  An audiogram

was attempted on May 15, 2000, but could not be completed.  The records reflect recurrent ear

---

[1](...continued)
Plaintiff upon his release, for them to take his legal property with him.  Simpson's "motion" is
now moot because Simpson was not transferred from the BOP to Maryland as that state
dropped its detainer against him.  Simpson now resides in Ruther Glen, Virginia, and is not
incarcerated.

infections and consistent treatment with antibiotics.

On December 5, 2000, a PA wrote a consultation request to have Simpson seen by Dr. Frank, an ENT Specialist.  Simpson was not seen by Dr. Frank until June 28, 2001.  Dr. Frank made a "preliminary diagnosis of left ear TM perforation, left ear discharge and hearing loss despite antibiotics X over one year and noted on the recommendation for an Audiogram; arrange for left ear Tympanyoplasty and Middle Ear Exploration."  (Dkt. Entry 6.)  On September 13, 2001, Plaintiff again presented at sick call with extreme pain in his left ear.

On December 10, 2001, Plaintiff had a Tympanyoplasty and Middle Ear Exploration at a private hospital performed by Dr. Frank.  Plaintiff claims that BOP staff failed to follow Dr. Frank's post-operative care instructions as he was not taken to see Dr. Frank for his post-operative visit for almost two months after surgery, instead of two weeks as requested by Dr. Frank.  Similarly, Simpson's sutures were removed later than advised by Dr. Frank.

On January 3, 2002, Simpson again appeared at sick call experiencing pain and discharge from his left ear.  He was seen by Dr. Frank on January 30, 2002, where a small left ear perforation was noted and antibiotics were prescribed.  Notable improvement was seen at Simpson's February 27, 2002, follow-up visit with Dr. Frank.  He was to return to see Dr. Frank in three months, but more than ten months passed and he had not seen Dr. Frank.  Simpson continued to experience pain in his left ear as well as a significant loss of hearing in that ear.

Simpson claims the BOP was negligent in failing to schedule an appointment with

an ENT specialist in a more timely manner; negligent in its post-operative care; and negligent in

failing to continue his appointments with Dr. Frank as suggested by Dr. Frank.  He seeks

monetary damages.

IV.         Discussion.

            A.          Motion for Appointment of Counsel.

            Simpson's motion for counsel is principally premised on his anticipated

incarceration in Maryland after his release from the BOP.   In addition, he expressed concerns

about his ability to represent himself should this matter proceed any further, noting the

perceived difficulties he had in obtaining discovery.[2]  (Dkt. Entries 43 and 50.)

            Although there is no constitutional or statutory right to appointment of counsel in a

civil case, the Court does have broad discretionary power to request that counsel accept an

appointment under 28 U.S.C. § 1915(e)(1). Tabron v. Grace, 6 F.3d 147, 153 (3d Cir. 1993).  In

Tabron, the Third Circuit announced the factors to be considered by a district court in deciding

whether to exercise its discretion and appoint counsel for an indigent litigant in a civil case.

---

    [2] As mentioned earlier, I denied Simpson's motion to compel discovery.  Thus, there is
no evidence of Defendant discharging its discovery obligations.  To the extent Simpson refers to
difficulties he may have encountered in obtaining medical records from Dr. Frank, the outside
ENT who performed the surgery on his left ear, Dr. Frank is not a BOP employee and is not a
party to this action.  Simpson has not presented evidence as to his efforts to subpoena his
records from Dr. Frank.  Likewise, he has not suggested Dr. Frank's records would demonstrate
that the care he received at the hands of the BOP medical professionals would demonstrate
their lack of adherence to accepted medical standards.

Initially, the <u>Tabron</u> court noted that "the district court must consider as a threshold matter the merits of the plaintiff's claim." <u>Id</u>. at 155.  Next, if a claim has arguable merit, "[t]he plaintiff's ability to present his or her claim is, of course, a significant factor that must be considered in determining whether to appoint counsel." <u>Id</u>. at 156.  "If it appears that an indigent plaintiff with a claim of arguable merit is incapable of presenting his or her case, serious consideration should be given to appointing counsel . . . and if such a plaintiff's claim is truly substantial, counsel should ordinarily be appointed." <u>Id</u>.  Further, under <u>Tabron</u>, the district court's decision whether to appoint counsel should be "informed" by a consideration of the following additional factors: the "difficulty of the particular legal issues"; "the degree to which factual investigation will be required and the ability of the indigent plaintiff to pursue such investigation"; whether a case is likely to turn on credibility determinations; whether expert testimony is required; and whether the litigant is capable of retaining counsel on his or her own behalf.  <u>Id</u>. at 156, 157 n.5; <u>see</u> <u>also</u> <u>Montgomery v. Pinchak</u>, 294 F.3d 492, 499 (3d Cir. 2002).  Moreover, the <u>Tabron</u> court held that the "appointment of counsel . . . may be made at any point in the litigation and may be made by the district court <u>sua</u> <u>sponte</u>." <u>Id</u>. at 156.  Finally, the <u>Tabron</u> court acknowledged that "courts have no authority to compel counsel to represent an indigent civil litigant," <u>id</u>. at 157 n.7, and cautioned against the indiscriminate appointment of counsel in view of the limited supply of competent attorneys willing to accept such appointments:

> We also emphasize that volunteer lawyer time is
> extremely valuable.  Hence district courts should not
> request counsel under § 1915(d) indiscriminately.  As
> the Court of Appeals for the Second Circuit has
> warned: "Volunteer lawyer time is a precious
> commodity. . . . Because this resource is available in
> only limited quantity, every assignment of a volunteer
> lawyer to an undeserving client deprives society of a
> volunteer lawyer available for a deserving cause. We
> cannot afford that waste."

Id. at 157.

Applying the relevant Tabron factors to Simpson's requests, I find that he has not

presented sufficient special circumstances which would justify the appointment of counsel.

First, Simpson is no longer in prison and now stands in the shoes of any other pro se litigant.

Additionally, his release from prison alleviates his concerns over restricted access to

Pennsylvania legal materials.  The difficulty of attempting to find a lawyer while incarcerated is

also obviously no longer present.  Furthermore, although Simpson worries about his ability to

make legal arguments or represent himself should this matter proceed further, I find Simpson

capable of pursuing and presenting his interests in this matter as reflected by his well written

pleadings, motions, and opposition materials submitted to date.  He has sufficient mental

capacity to present clear arguments and protect his interests when necessary by filing the

appropriate documents, whether it be a motion to compel or a motion for a preliminary

injunction.  His filings in this matter portray an ability to pursue discovery and the necessary

investigation required to address the medical malpractice claim.  Although this case may turn on

credibility determinations or the presentation of expert testimony, satisfying this prong of the

Tabron factors alone is insufficient reason to appoint counsel in this matter.  Since at least

February 17, 2004, Simpson was aware of Defendant's position that expert testimony was

needed to avoid summary judgment.  Nothing in the record reveals some impediment to

Simpson obtaining his medical records from the BOP and presenting them to a qualified person

for an expert opinion.  Also, while Simpson has presented documents as to his 2002 efforts to

obtain legal counsel, he does not state what effort, if any, he has made since then to obtain

counsel on his own now that he has acquired some discovery from Defendant which would

allow outside counsel to better evaluate the merits of his case.

I do not believe Simpson has presented a situation requiring the appointment of

counsel given that his filings are measured against the liberal construction of pro se pleadings.

See Haines v. Kerner, 404 U.S. 519 (1972).  Nor can I find that appointment of counsel at this

stage of the case would influence his ability to oppose Defendant's motion for summary

judgment.  Accordingly, the motion for appointment of counsel will be denied.

### B.    The Summary Judgment Motion.

Summary judgment should be granted when "the pleadings, depositions, answers

to interrogatories, admissions on file, together with affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(c).  "The mere existence of some alleged factual dispute

between the parties will not defeat an otherwise properly supported motion for summary

judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson v.</u>

<u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986) (emphasis in original).  Only disputes over

facts that might affect the outcome of the suit will preclude the entry of summary judgment.  The

substantive law determines which facts are material and which facts are irrelevant.  <u>Id</u>. at 248.

A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party.  <u>Id.</u> at 250.  If the court determines that "the record taken as a whole could not

lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'."

<u>Matsushita Elec. Industrial Co. v. Zenith Radio</u>, 475 U.S. 574, 587 (1986) (quoting <u>First Nat.</u>

<u>Bank of Ariz. v. Cities Service Co.</u>, 391 U.S. 253, 289 (1968)).  All inferences, however, "'should

be drawn in the light most favorable to the non-moving party, and where the non-moving party's

evidence contradicts the movant's, then the non-movant's must be taken as true'."  <u>Pastore v.</u>

<u>Bell Tel. Co. of Pennsylvania</u>, 24 F.3d 508, 512 (3d Cir. 1994) (quoting <u>Big Apple BMW, Inc. v.</u>

<u>BMW of N. America, Inc.</u>, 974 F.2d 1358, 1363 (3d Cir. 1992); <u>Wicker v. Consol. Rail Corp.</u>, 142

F.3d 690, 696 (3d Cir. 1998).

       The moving party bears the initial responsibility of stating the basis for its motion,

identifying those portions of the record which demonstrate the absence of a genuine issue of

material fact.  As a general rule, a moving party who carries the burden of proof on a claim

cannot show an entitlement to summary judgment by relying upon the bare averments of the

moving party's pleadings.  Instead, competent evidence must be presented to support the

moving party's version of events. "Once the moving party has carried the initial burden of

showing that no genuine issue of material fact exists, the nonmoving party . . . 'must make a

showing sufficient to establish the existence of every element essential to his case, based on

the affidavits or by the depositions and admissions on file'." Pastore, 24 F.3d at 511 (quoting

Harter v. GAF Corp., 967 F.2d 846, 852 (3d Cir. 1992)).

       Liability under the FTCA is controlled by state law.  Berman v. United States, 205

F. Supp. 2d 362, 364 (M.D. Pa. 2002); 28 U.S.C. § 1346(b).  In Pennsylvania, in order to

present a prima facie case of medical malpractice, a plaintiff must prove that "1) the medical

practitioner owed a duty to the plaintiff; 2) the practitioner breached that duty; 3) the breach was

the proximate cause of, or a substantial factor in, bringing about the harm the plaintiff suffered;

and 4) the damages suffered were the direct result of the harm." Carrozza v. Greenbaum, 866

A.2d 369, 379 (Pa. Super. 2004).  "Medical malpractice is further defined as the 'unwarranted

departure from generally accepted standards of medical practice resulting in injury to a patient,

including all liability-producing conduct arising from the rendition of professional medical

services.'" Grossman v. Barke, 868 A.2d 561, 566 (Pa. Super. 2005)(citing Toogood v. Owen J.

Rogal, D.D.S., P.C., 824 A.2d 1140, 1145 (Pa. 2003)).  Moreover, as a general rule, a plaintiff

has the burden of presenting expert opinions that the alleged act or omission of the defendant

physician or hospital personnel fell below the appropriate standard of care in the community,

and that the negligent conduct caused the injuries for which recovery is sought..  Grossman,

868 A.2d at 566-67.  To be admissible, the expert's opinion must be rendered within a

reasonable degree of medical certainty.  The same requirements pertain when the plaintiff

seeks to recover against an institutional defendant for its acts.  See Acadia v. The Graduate

Hospital, No. Civ. A. 01-CV-5429, 2004 WL 906195, at *3 (E.D. Pa. April 28, 2004).  Expert

testimony, however, is not required when a matter "is so simple or the lack of skill or care is so

obvious as to be within the range of experience and comprehension of even non-professional

persons."  Hightower-Warren v. Silk, 698 A.2d 52, 54 n.1 (Pa. 1997).  In such circumstances,

the doctrine of res ipsa loquitur may apply.

        The Pennsylvania Supreme Court has indicated that the instances when expert

opinions may be unnecessary in a medical malpractice case are rare:

> Courts sitting in medical malpractice cases require detailed expert
> testimony because a jury of laypersons generally lacks the knowledge to
> determine the factual issues of medical causation; the degree of skill,
> knowledge, and experience required of the physician; and the breach of
> the medical standard of care. In contrast, plaintiffs in res ipsa loquit cases
> rely on the jury to fill in the missing pieces of causation and negligence,
> inherent in their cases, with the jury's common experience. Determining
> whether there was a breach of duty, however, involves a two-step
> process: the court must first determine the standard of care; it then must
> examine whether the defendant's conduct measured up to that standard.
> Not only does the plaintiff have the burden of proving that the defendant
> did not possess and employ the required skill and knowledge, or did not
> exercise the care and judgment of a reasonable professional, he or she
> must also prove that the injury was caused by the failure to employ that
> requisite skill and knowledge. We have previously concluded that this

must be accomplished with expert medical testimony presented at trial by
doctors testifying as expert witnesses.

Res ipsa loquitur must be carefully limited, for to say whether a particular
error on the part of a physician reflects negligence demands a complete
understanding of the procedure the doctor is performing and the
responsibilities upon him at the moment of injury. Thus, in evaluating a
doctor's decision to administer a nerve block injection in a particular
location, an intelligent jury analysis requires some understanding of the
results of giving the injection in various places; the skill required in
pinpointing a specific location; and the likelihood of giving the injection in
an unintended site. We reaffirm our earlier conclusion, set forth in
numerous decisions of this Court that, medicine being an applied science,
the realm of reasonable choice is best defined by those engaged in the
practice, and expert medical testimony on this issue is required. As aptly
noted by the Justices of the Supreme Court of New Mexico, "The cause
and effect of a physical condition lies in a field of knowledge in which only
a medical expert can give a competent opinion.... [Without experts] we feel
that the jury could have no basis other than conjecture, surmise or
speculation upon which to consider causation." Woods v. Brumlop, 71
N.M. 221, 377 P.2d 520, 523 (1962).

Toogood v. Owen J. Rogal, D.D.S., P.C., 824 A.2d 1140, 1149 (Pa. 2003).  If medical opinion is

necessary here, then Defendant is entitled to summary judgment.  See Maresca v. Mancall, 135

Fed. Appx. 529, 531 (3d Cir. 2005).

Plaintiff opposes Defendant's motion on two grounds: (1) that his then pending

motion to compel, if granted, would have provided him with discovery necessary to adequately

respond to Defendant's motion for summary judgment; and alternatively, (2) that no medical

expert testimony is required on his part as "[t]his case involve[s] a matter that is so simple that

the lack of skill or want of ordinary diligence can be said to be obvious."  (Dkt. Entry 41.)

-13-

As to Simpson's first claim, I note that on March 14, 2005, I denied his Motion to Compel after finding Defendant's responses were not evasive or incomplete.[3] (See Dkt. Entry 52.)   Simpson was given a reasonable period of discovery in this case and he has not shown that Defendant's actions in any manner hampered his ability to obtain relevant information necessary to assist in defending against the present summary judgment motion.

As to the claim that this matter does not warrant an expert, the Pennsylvania Supreme Court's admonition about liberal application of res ipsa loquitur militates in favor of Defendant.  Simpson urges that a layperson would discern that his chronic ear infections warranted treatment by a physician and/or an ENT in a more timely fashion than he received, thus removing the need for a medical expert to testify on his behalf.  Although a layperson may infer that recurrent ear infections could pose a serious medical need, it is the appropriateness of the treatment Simpson received while confined within the BOP and the question of causation that are at issue here.  This is not a case where Plaintiff's medical condition was left untreated. Simpson's Complaint acknowledges that which the medical records show: Simpson received constant attention for his ear problems.  He was routinely prescribed antibiotics.  At times his condition improved, and at other times, it worsened.  Whether he should have been seen by a

---

[3] Simpson did not obtain any additional information as a result of my ruling on that motion; thus, he was not prejudiced in any manner by responding to Defendant's Motion for Summary Judgment prior to my resolving that discovery matter.  Furthermore, Simpson did not seek reconsideration of that decision or an allowance to amend his submission in opposition to Defendant's motion for summary judgment based on further discovery.

specialist sooner under these circumstances is not a matter within the knowledge of the average layperson.  There is no evidence that the care he received from the various BOP physicians assistants deviated from accepted medical standards, or that their alleged deviations were the proximate cause of his recurrent ear infections or perforated ear drum.  Nor is it a matter of common knowledge to determine what injury, if any, Simpson sustained as a result of the delay in seeing the specialist.  In this regard, it is significant that, even after surgical intervention, Simpson's condition did not improve and he required additional medical attention, which he received.  Under these circumstances, it is far from clear that earlier intercession by an expert would have made any difference in Simpson's condition or pain.  Because absence of due care and causation are not so obvious as to allow a fact finder to decide this case without expert opinions, Defendant is entitled to summary judgment.

**V.**        **Conclusion**.

          For the reasons set forth above, Plaintiff's motion for appointment of counsel will be denied and Defendant's motion for summary judgment will be granted.  An appropriate Order follows.

                                        **s/ Thomas I. Vanaskie**
                                        Thomas I. Vanaskie, Chief Judge
                                        Middle District of Pennsylvania

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

ERNEST SIMPSON,                          :
                    Plaintiff,           :
            v.                           :   CIVIL NO. 3:CV-02-2313
                                         :
FEDERAL BUREAU OF PRISONS,               :   (CHIEF JUDGE VANASKIE)
ET AL. ,                                 :
                    Defendants.          :

## O R D E R

**NOW**, this **28th day of SEPTEMBER**, **2005**, for the reasons set forth in the

foregoing Memorandum, **IT IS HEREBY ORDERED THAT:**

     1.    Plaintiff's Motion for Appointment of Counsel (Dkt.
         Entry 43) is **DENIED**.

     2.    Defendant's Second Motion for Summary Judgment
         (Dkt. Entry 36) is **GRANTED**.

     3.    The Clerk of Court is directed to enter judgment in
         favor of Defendant and to mark this matter **CLOSED.**

                              **s/ Thomas I. Vanaskie**
                              Thomas I. Vanaskie, Chief Judge
                              Middle District of Pennsylvania

O:\PRO_SE\Taggart\Vanaskie\Simpson (02-2313)\drafts\050623 Simpson FTCA MSJ.wpd